OWEN VAN VACTER *vs.* BREWSTER, SOLOMON & CO.

If the jury find in accordance with the law and evidence, though opposed to the charge of the court, and the court afterwards enters up judgment on the verdict and refuses to grant a new trial, it will not be error.

V. engaged by his acceptance to pay a certain sum to B. S. & Co., out of his collections for E. J. & Co. V. collected for E. J. & Co., currency of State banks, which afterwards depreciated—held, that an offer by V. to pay B. S. & Co., the kind of funds he collected, is no defence to an action on the acceptance : B. S. & Co. are entitled to have their demand satisfied in the lawful currency of the country.

ERROR from the Madison circuit court.

Brewster, Solomon & Co. sued the plaintiff in error, upon the following instrument of writing :

"MADISONVILLE, January 30, 1838.

"Mr. Owen Van Vacter, please pay to the order of Brewster, Solomon & Co., of New York, five hundred and eighty one $\frac{32}{100}$ dollars, with interest from 1st of April next, out of the collection of claims placed in your hands by us for this purpose, so soon as said claims shall be collected, first requiring of them our note, due 5th and 8th January, 1838, for $539 $\frac{26}{100}$."

"ENLOE, JOHNSON & CO."

Which was accepted, generally, by Mr. Van Vacter.

The declaration contained two counts, the first in the usual form of an action of assumpsit, as upon a bill of exchange; the second, a common count for money had and received. The plea was non assumpsit. The case was submitted three times to the jury; the first time, they found for the defendant below; the second time, there was a mis-trial, and the third time the jury found for the plaintiffs below, a verdict of $470 $\frac{31}{100}$.

The defendant, Van Vacter, moved for a new trial, which the court below refused to grant, whereupon he embodied the facts in a bill of exceptions, and brought the case by writ of error to this court.

The opinion of the court, and the argument of Mr. Van Vacter, who appeared in proper person, sufficiently set forth the facts elicited upon the last trial.

*Van Vacter*, in proper person.

The plaintiff in error will content himself with a very brief argument, as the whole merits of the case are obviously presented in the bill of exceptions. The question for the consideration of the court is not, whether the instructions given on the trial of the cause were correct, and founded in a just view of the law; but whether the finding of the jury was in accordance with said instructions as given and not excepted to? for if said finding was contrary to the instructions, the court erred in overruling the motion for a new trial. Then, was the finding of the jury (in view of the testimony) in accordance with the instructions of the court? The third instruction asked for by the defendant below, and given by the court, was in the following words: "That if they believe from the evidence that defendant collected Mississippi and Alabama Railroad money, and upon demand he offered to pay such money, in the absence of proof of instructions to collect particular funds, they must find for the defendant." The only witness examined concerning the facts in reference to which said instruction was asked, was John Handy. He states in so many words, "that from what transpired on that occasion, (that is, when the witness demanded payment of the instrument sued on) he believed defendant had made collection in said 'notes,' (the notes of the Mississippi and Alabama Railroad Company.) Several witnesses testified that said notes constituted almost the entire circulating medium of the country up to the May term, 1838, of ' the Madison circuit court,' and that it was the only money collected by the sheriff of said county on executions returnable to said term; ' that such was the state of affairs, it was believed nothing else could be collected.' The finding of the jury itself shows that they were satisfied the collection was made in said notes. For the instrument sued on, calls for $581 $\frac{32}{100}$, with interest from April 1st, 1838, and the verdict of the jury was for $470 $\frac{31}{100}$, on

the third day of May, 1842, showing that they supposed the notes aforesaid were worth when they were tendered, about sixty cents in the dollar.   It is most clear, then, from this view of the question, that the finding of the jury was not in accordance with the instruction given, and consequently that the court erred in overruling the motion for a new trial.

But it is conceived, apart from a consideration of the correctness or incorrectness of said instruction, and viewing the case an original one, now for the first time before a court of justice, and to be tried upon its merits, that the finding of the jury should be for the defendant below.

1. From the face of the instrument sued on, and from the amount of the note therein mentioned, the plaintiff below contemplated a collection in depreciated money.   Said instrument calls for $581 $\frac{32}{100}$, on the first day of April, 1838, and the amount of said note, with interest at that time, is $550, making a difference of $31 $\frac{32}{100}$.

2. At the May term, 1838, of the Madison circuit court, the time when the amount of said instrument is supposed to have been collected by the defendant below, said notes were the only money that was, or could be collected by the sheriff of the county.   When said money was collected, the plaintiffs below were duly notified of the collection.   But, instead of calling for the same, they permit it to remain and depreciate in the hands of the defendant below, until September 1st, 1838, when the funds so collected are refused.   True, no proof was introduced before the jury that the plaintiffs below were so notified, but the jury were instructed that, in the absence of proof to the contrary, they were to presume the defendant below, acting in the capacity of a trustee, did his duty in that matter.   The great difficulty of one so situated to make such proof of the discharge of his duty, shows the manifest propriety of the rule of law given in charge by the court.

3. There was no proof before the jury that the note mentioned in the instrument sued on was tendered when the money was demanded, although there was an averment to that effect in plaintiffs' declaration, and although it is manifestly a condition precedent to the payment of the money.

4. It is certainly unnecessary to trouble the court with an argument to show that the instrument sued on is not a bill of exchange, as stated in the first count of plaintiffs' declaration. A bill of exchange must be for a sum certain, and not payable out of a particular fund. Hence the court below, on the application of the defendant, refused permission to the plaintiffs to introduce their proof under said first count. The rights of the plaintiffs, and the liabilities of the defendant, under this view of the case, can have no reference to the obligations arising under a bill of exchange. The defendant was alone liable to the payment of such funds as came into his hands as the attorney of Enloe, Johnson & Co., the drawers of the order, by virtue of collections to be made out of the claims left with him by the said Enloe, Johnson & Co. If, in the discharge of his duty as attorney for Enloe, Johnson & Co., he failed to comply with the obligations resulting from the relation of client and attorney, to the said Enloe, Johnson & Co., is he responsible, and not to the plaintiffs. His only obligation to these latter, was, to tender, when demanded, such funds as he had collected for Enloe, Johnson & Co. If they were not satisfied to receive them, they still had their recourse upon Enloe, Johnson & Co., by virtue of the note which they now hold against the latter, E. J. & Co. But, supposing the relation of client and attorney to exist between the plaintiffs and defendants, it is not conceived by what principle of law or morals the defendant can be held responsible for anything mere good faith required. The whole mass of the testimony shows the exercise of good faith—that he did all which, under the circumstances, he could do.

*A. H. Handy*, for defendants in error.

This case comes up on exception to the action of the court below, in overruling a motion for a new trial, made by the plaintiff in error. The question presented to this court, is whether the verdict of the jury should be set aside? and this depends upon the preliminary inquiry, what was the whole evidence before the jury?

The bill of exceptions in this case sets forth certain evidence

given on the trial below, before the jury. It contains no statement that this was all the evidence, or that no other evidence was given at the trial. Important matters, having great weight with the jury, might be omitted, and still the bill of exceptions, so far as it attempts to state the evidence, be true. It is no answer to this to say, that it must be presumed that the bill of exceptions states all the evidence, because the judge has signed it; for as facts lie more peculiarly within the province of the jury, circumstances having much weight with them, might have passed altogether unnoticed by the judge, or left very little impression on his mind, or been deemed unimportant by him. But if it is necessary for the bill of exceptions to state that it contains the whole evidence, this not only renders it certain that the whole case, as before the jury, is presented to the appellate court; but it causes the judge to use greater care in observing and setting out the evidence, and prevents him, in a great degree, from so shaping the case as to justify his own decision before the appellate court.

Presumptions are not, therefore, to be entertained as to the bill of exceptions containing the whole evidence; but every thing required by the law to be done in relation to it, must appear affirmatively. This is the principle on which the case of *Patterson* v. *Phillips,* 1 How. 572, was determined by this court; and it has been followed in many subsequent cases. The cases alluded to have turned upon the time of taking and signing the bill of exceptions, appearing affirmatively on the face of it. The presumption is strong that this was done before the jury retired from the bar, because such is the requirement of law, and we should presume that the judge conformed to it. Yet this court sets its face against such presumptions, and for the want of this formality, has refused to consider many cases as properly before the court—thus establishing the general principle that these proceedings must be construed strictly, and that presumptions are not to be indulged.

The case at bar is much less entitled to the benefit of presumptions than that above referred to. That was a matter of mere form, still presenting the whole case to this court. This

is a matter of substance, where this court is called upon to determine from the whole evidence, whether the jury found a correct verdict, or rather to pronounce that the jury found a wrong verdict.  How can this be done, unless it clearly and fully appears to the court, that the whole evidence presented to the jury is before the court?  The court might say that, so far as appears by the record, the verdict is wrong; but the question would immediately force itself upon their minds, does it appear that the whole evidence is before us?  All the presumptions are in favor of the verdict, (1 Stark. Ev. 470,) and we must be satisfied that we are in possession of the full grounds on which the verdict is founded, otherwise we must presume that the jury judged correctly.  In the case of *Corprew* v. *Canavan*, 4 How. 376, this court held that the bill of exceptions, in motions for new trials, "must embody all the evidence."  The statute authorizing the proceeding, provides that the party excepting to the decision of the court, on a motion for a new trial, must reduce to writing "the substance of the evidence," and that, "in all cases when the record sufficiently sets forth the case," this court shall have power to grant new trials.  H. & H. p. 493, § 52.  Now where is the statement in the record, that the bill of exceptions "embodies the evidence," or contains "the substance of the evidence" offered to the jury; and in the absence of that, how can it be said that "the record sufficiently sets forth the case," to enable this court to form a correct judgment of the propriety of the verdict?

This proceeding is one of the last that can be conceived, where presumption should be indulged, because it is not only an innovation upon the common law, but an encroachment upon the prerogative of the jury, to decide upon the facts of any case, a right that will never be infringed upon by the court, except upon the most clear and positive evidence that it has been improperly exercised.

It is insisted, therefore, that the court cannot pronounce the verdict of the jury in this case wrong, because there is nothing in the record to show that the whole evidence is embodied in the bill of exceptions.

The error assigned in the record, is, that the court refused to grant a new trial. It is contended by the plaintiff in error, that the verdict is contrary to the evidence and to the fourth instruction given by the court at the instance of the defendant below. This instruction is, "if the jury believe from the evidence, that the defendant collected Mississippi and Alabama Railroad money, and, upon demand, offered to pay such money in the absence of proof of instructions to collect particular funds, they must find for the defendant."

The evidence as stated, and as it appears by the record, shows that Van Vacter had become liable to pay the plaintiff below, a sum of money out of the proceeds of certain claims in his hands for collection; which claims were placed in his hands as an attorney, and upon which the owners drew an order in favor of the plaintiff below, which he accepted—that when called on by the bearer of said order several months afterward, he proposed to pay him in funds at a discount of fifty or sixty per cent., which were refused. It does not appear by the evidence that he then claimed to have received such funds, and that he was compelled by the circumstances of the country to receive the same; but it is only stated that the witness believed from what transpired when the depreciated funds were proposed to be paid, that the collection had been made in said notes. In the interview between the witness (being the holder of the order,) and Van Vacter, the latter did not say anything (as witness recollected) amounting to an acknowledgment of collection, but still, afterwards offered to pay the depreciated funds. Nor does it appear by the evidence, at what time the funds proposed to be paid were collected by him, whether in the spring of 1838, when they were collected by the sheriff on executions, or in August or September, 1838, about the time they were proposed to be paid, when they were at fifty or sixty per cent. discount. Nor does it appear by the testimony, that Van Vacter, if he collected the money in the spring of 1838, when, as is alledged, he was compelled to do so by the necessities of the times, ever gave any information to the plaintiffs of the collection, whereby they might have speedily protected themselves from its depreciation.

Now, we cannot avoid the conclusion, from the evidence as stated, that at the time he proposed to pay, he had collected some kind of money; for otherwise, his conduct would convict him of an effort to defraud the holder of his acceptance by speculating upon it.   If he had collected the money, he should honestly have said so; and if he had been compelled to receive doubtful funds by circumstances, he should fairly have declared the truth. Then he must have collected the money, either in the spring of 1838, while it was receivable, (as it is contended,) or after it became depreciated.   If at the former time, it was his duty, acting in good faith and having a proper regard to the uncertainty of the funds and the protection of the party to whom it was to be paid, to give speedy notice of it.   And, although the relation of client and attorney might not have subsisted between the parties, yet if he claimed the benefit of paying to the plaintiff below particular kinds of moneys collected, it was his duty to notify them of the nature of the funds collected as well to justify himself under the necessity that compelled him to receive such funds, as to enable the other party to protect himself from loss.   If the money was collected in Brandon notes, in the spring of 1838, it was most gross negligence for him, under the then circumstances of that kind of funds, not to notify the plaintiffs of it.   If it was collected after the spring of 1838, and when it was so greatly depreciated as is shown, he was guilty of the most culpable negligence in receiving such funds.

But it is strange that no evidence is offered by Van Vacter, to show that he collected Brandon money at any time.   Inasmuch as he must have collected it, if at all, on the claims specified in his acceptance, it was entirely in his power to show in what funds he received it, and upon what claims.   But no such evidence is given, and this must cast a suspicion over his conduct, as we cannot doubt from the fact of his proposing to pay Brandon money, and not stating that he had collected such funds, that he had collected some kind of money on the claims placed in his hands.

Under these circumstances, Van Vacter has no right to complain of the verdict.   The jury only held him liable for the

value of Brandon money in May, 1838, on account of his gross negligence in not notifying the plaintiff of the collection of funds of so doubtful a character.    The plaintiffs have much more reason to complain of the verdict, as is above shown; but they have made no objection to it.    But it is but sheer justice that he should pay the value of the money at the time he alledges he received it.    As to his failure to notify the parties of its collection, they would have sustained a great loss by receiving it when offered.    He should bear the consequences of his own negligence, not they.

With regard to the instructions of the court, to which the verdict is alledged to be in opposition, its legal correctness is very questionable.

1. It would allow the plaintiff in error to have availed himself of a tender without pleading it.    He had pleaded non assumpsit, which precluded him from insisting upon a defence of tender, which should have been pleaded, and which is incompatible with non assumpsit.    1 Harr. & Gill, 406.    1 Chitty Plea, 593.

2. It recognizes the doctrine, that Brandon money, which is not a legal tender under the constitution, can be rendered so by extraneous circumstances.

3. It is erroneous in holding that it was necessary for the plaintiff below to give any instructions to Van Vacter that he was to receive nothing but legal money—for this is not correct as a principle of law, nor is it in conformity with what is alledged by him, viz : that he was not the attorney of the holders of his acceptance.

It is an established rule, in relation to new trials, that they will never be granted except " with a view to the attainment of justice."    " Being an application to the discretion of the court, who ought to exercise that discretion in such a manner as will best answer the ends of justice, when they perceive that complete and substantial justice has been done, they will not discuss the question of law, nor suffer it to prevail to work injustice."    Graham on New ,Trials, 342.    1 Burr, 54.    In *Estwick* v. *Cailland,* 5 T. R. 420, it is held, that on an applica-

tion for a new trial, "the only question is, whether, under all the circumstances of the case, the verdict be or be not according to the justice of the case; for though the judge may have made some little slip in his directions to the jury, yet if justice be done by the verdict, the court ought not to interfere and set it aside." S. P. in *Carstairs*, v. *Stein*, 4 M. & S. 192.

If then this instruction had been favorable to the plaintiffs below, the court would not set aside the verdict; much less will it be set aside when the instruction was favorable to the defendant, it being erroneous in law, and the jury having found in opposition to it, and in favor of the substantial justice of the case.

Unless it clearly appear that the jury have formed an erroneous judgment of the case, a new trial is never granted. In all doubtful cases, the presumption is, that the verdict is correct. And even in doubtful cases, when the conclusion of the jury is a reasonable inference from the evidence, the court will not disturb the verdict, even in criminal cases. 1 Stark. Ev. 468, n. (y.) Ib. 470. S. P. 12 Wend. 27. 8 Cow. 223.

Whether the verdict, then, be in accordance with the instruction of the court (as it is urged not to be by the plaintiff in error) it is immaterial, if the jury had reasonable grounds on which to found it; or if it is clearly according to the justice of the case, or even if it be doubtful whether they should have found as they did; for the determination of such cases of doubt and difficulty arising from the conduct of individuals, lies within their own peculiar province. This is the law even in applications for new trials to the judge who heard the evidence, and was capable of fully appreciating the course of the jury. With how much more strictness and caution should it be applied by an appellate court, when called upon, as in this case, not only to reverse the judgment of the court below, in refusing a new trial, but also to pronounce the verdict of the jury wrong, and that, too, without it appearing that all the evidence before the jury is presented to this court.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action of assumpsit, brought by the defendants in error, upon an order for the payment of a certain sum of money, out of funds of the drawers, Enloe, Johnson & Co., when collected; the payees first returning to the drawee, the note of Enloe, Johnson & Co., payable to Brewster, Solomon & Co. There was a general acceptance of the order or bill of exchange (as it is called in the declaration) by Van Vacter. Upon the trial there was proof that the acceptor had collected a sufficiency of funds to pay the order; at least there was proof from which the jury inferred the fact. The defendant below, attempted to prove that he had made the collections in Mississippi and Alabama Railroad Bank notes, and there was probably sufficient circumstantial evidence for the jury to have inferred that fact, if they had thought proper to do so.

Upon the trial various instructions were asked from the court on both sides, all of which were given but one; and to the refusal to give that one, no bill of exceptions was filed. The jury found a verdict for the plaintiff, but for less than the amount of the order sued on, from which it may be inferred that they scaled down the amount, in consequence of the depreciation to which it was proven that that sort of money had been subjected.

A motion was made for a new trial, which was overruled, and the evidence spread out in a bill of exceptions, and the cause brought by writ of error to this court.

The principal ground relied on to reverse the judgment, is that the jury found a verdict contrary to the third charge of the judge, given at the request of the defendant. That charge is in these words: "That if they believe from the evidence, that defendant collected Mississippi and Alabama Railroad money, and upon demand he offered to pay such money, in the absence of proof of instructions to collect particular funds, they must find for the defendant."

It was in proof that the defendant had offered to pay in that kind of funds.

Upon this point the argument is that "the question for the consideration of the court is not whether the instructions given

on the trial of the cause were correct, and founded on a just view of the law, but whether the finding of the jury was in accordance with the instructionsas as given, and not excepted to?" We do not think that this is a just and proper view of the subject. If the jury found in accordance with the law and evidence, though opposed to the charge of the court, and the court afterwards enters up judgment on verdict, and refuses to grant a new trial, that is evidence that the court is satisfied with the finding. Suppose we consider the instructions to be wrong, must we reverse the cause, and send it back with directions to the court to give a different charge on another trial? That would be to do a vain and useless thing, because, in such a state of things, the jury would already have done what we supposed they ought to do. It would moreover force us to decide, not according to our own opinions of the law, but according to the supposed conformity of the verdict of the jury to the charge of the court below.

This makes it necessary for us to pass upon the correctness of the charge. Whatever might be the rule, as between attorney and client, or principal and agent, as to which we wish to give no intimation of opinion, we do not think it has been rightly expounded in this instance, where no such relation exists. Mr. Van Vacter was not the counsel of Brewster, Solomon & Co.; he was not collecting for them; but he engaged, by his acceptance, to pay a certain sum to them out of his collections, for Enloe, Johnson & Co. They had no control over him; they had a money demand upon him, on the occurrence of a particular contingency; and they have a right to have that demand satisfied in the lawful currency of the country.

Upon the whole case we think the judgment should be affirmed, and we so order.